Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly Describe the property to be searched or identify the person by name and address)*<br>One Black Apple iPhone | Case No.    22-9364 MB |

## SEARCH AND SEIZURE WARRANT

To:    Task Force Officer Kenneth Jeske and any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of <u>Arizona.</u>
*(identify the person or describe the property to be searched and give its location):*

### AS FURTHER DESCRIBED IN ATTACHMENT A-2.

The person or property to be searched, described above, is believed to conceal (identify the person or describe the property to be seized):

### AS SET FORTH IN ATTACHMENT B-2.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

                                                    10/5/2022
YOU ARE COMMANDED to execute this warrant on or before _____.
                                                                                        *(not to exceed 14 days)*

      ☐ in the daytime 6:00 a.m. to 10 p.m.
      ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>Any United States Magistrate Judge on criminal duty in the district of Arizona.</u>

      ☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*    ☐ for____ days *(not to exceed 30)*
                            ☐ until, the facts justifying, the later specific date of _____.

                              9/21/2022@1:58pm
Date and time issued: _____            _____
                                                                                                *Judge's signature*

City and State:  <u>Phoenix, Arizona</u>                        <u>Honorable Eileen S. Willett, U.S. Magistrate Judge</u>
                                                                                    *Printed name and title*

ATTACHMENT A-2

DIGITAL EVIDENCE LIST

**Telephone 2**: Seized from Stuart Andrew NEWELL, on September 8, 2022

1. A black Apple iPhone with a partially cracked corner screen, secured in DEA custody in Phoenix AZ.

This warrant authorizes the forensic examination of **Telephone 2** for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B-2**

*Property to be seized*

1.      Any records and information found within the digital contents of **Telephone 2** that relate to violations of 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), and 21 U.S.C. § 843(b) (Use of a Communication Facility to Commit a Federal Drug Felony), including:

      a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

      b.  all information related to buyers or sources of drugs (including names, addresses, telephone numbers, contact information, photographs, locations, or any other identifying information);

      c.  all bank records, checks, credit card bills, account information, or other financial records reflecting the disposition of drug proceeds;

      d.  all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

      e.  any information recording schedule or travel;

      f.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

      g.  contextual information necessary to understand the above evidence.

2.      Any records and information found within the digital contents of **Telephone 2** showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information;

mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
## District of Arizona

In the Matter of the Search of
*(Briefly Describe the property to be searched or identify the person by name and address)*

One Black Apple iPhone

Case No.    22-9364 MB

## APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Kenneth Jeske, a federal law enforcement officer for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property (*identify the person or describe the property to be searched and give its location*):

### As further described in Attachment A-2.

Located in the District of  Arizona , there is now concealed (*identify the person or describe the property to be seized*):
The person or property to be searched, described above, is believed to conceal (identify the person or describe the property to be seized):

### As set forth in Attachment B-2.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 21:841(a)(1) | Possession with Intent to Distribute a Controlled Substance |
| 21:843(b) | Unlawful Use of a Communications Facility to Facilitate the Distribution of a Controlled Substance |

The application is based on these facts:

### The Affidavit of Task Force Officer Kenneth Jeske is incorporated herein by reference.

☒ Continued on the attached sheet.
☐ Delayed notice of __ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Brandon Brown *BB*

_____
*Applicant's Signature*

Sworn telephonically and signed electronically

TFO Kenneth Jeske, DEA Task Force Officer
*Printed name and title*

9/21/2022@1:58pm

Date and time issued: _____

_____
*Judge's signature*

City and State: Phoenix, Arizona _____

Honorable Eileen S. Willett, U.S. Magistrate Judge
*Printed name and title*

ATTACHMENT A-2

DIGITAL EVIDENCE LIST

**Telephone 2**: Seized from Stuart Andrew NEWELL, on September 8, 2022

1. A black Apple iPhone with a partially cracked corner screen, secured in DEA custody in Phoenix AZ.

This warrant authorizes the forensic examination of **Telephone 2** for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B-2**

*Property to be seized*

1.      Any records and information found within the digital contents of **Telephone 2** that relate to violations of 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), and 21 U.S.C. § 843(b) (Use of a Communication Facility to Commit a Federal Drug Felony), including:

> a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;
>
> b.  all information related to buyers or sources of drugs (including names, addresses, telephone numbers, contact information, photographs, locations, or any other identifying information);
>
> c.  all bank records, checks, credit card bills, account information, or other financial records reflecting the disposition of drug proceeds;
>
> d.  all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;
>
> e.  any information recording schedule or travel;
>
> f.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;
>
> g.  contextual information necessary to understand the above evidence.

2.      Any records and information found within the digital contents of **Telephone 2** showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information;

mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Kenneth Jeske, being first duly sworn, hereby deposes and states as follows:

### I.   INTRODUCTION AND AGENT BACKGROUND

1.   Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular Telephone 1 and cellular Telephone 2, described more particularly in Attachments A-1 and A-2, and to extract the electronically stored information set forth in Attachments B-1 and B-2, which represents evidence and/or instrumentalities of the criminal violations further described below.

2.   Task Force Officer ("TFO") Kenneth Jeske #10480, has been a Sworn Police Officer with in the state of Arizona  since August 1997, and is an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7), that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18, United States Code, Section 2516.  TFO Kenneth Jeske is assigned to investigate criminal activity involving and related to the illegal distribution of controlled substances.  Since January 2020, TFO Kenneth Jeske has been assigned to Phoenix DEA Tactical Diversion Squad as a Glendale Police Department Task Force Officer.

3.   In the area of training, TFO Kenneth Jeske holds Bachelor of Science Degree in Criminal Justice from Arizona State University.  TFO Kenneth Jeske has attended the Northern Arizona Law Enforcement Academy, which included basic drug identification and detection instruction.  TFO Jeske has also attended the United States Drug Enforcement Administration Narcotic Investigator School.  TFO Kenneth Jeske also is certified by the Arizona Department of Public Safety Crime Laboratory as a Marijuana Field Tester along with dangerous drugs and narcotic drugs as well.  TFO Kenneth Jeske

has also completed a 40-hour clandestine drug laboratory investigation/certification course, through the Maricopa County Sheriff's Office. TFO Jeske has also received numerous hours of drug investigation training sponsored by the Multijurisdictional Counterdrug Task Force.

4.  TFO Kenneth Jeske has participated in several investigations involving the interception of wire communications and is familiar with the way's narcotics traffickers conduct business, including, but not limited to, methods of importing, manufacturing and distributing narcotics source, and the use of cellular telephones and other telecommunications methods to conduct transactions.

5.  TFO Kenneth Jeske is familiar with the manner in which drug traffickers and money launderers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances, their use of cellular telephones, numerical codes, and code words to conduct their transactions. TFO Kenneth Jeske is familiar with the way's traffickers of controlled substances and others receive, collect, conceal, and launder the proceeds of their illegal trafficking activities, including proceeds derived from the sale and distribution of controlled substances.

6.  By virtue of his employment as a Glendale Police DEA Task Force Officer, TFO Kenneth Jeske has performed various tasks, which include: functioning as a surveillance officer; observing and recording movements of persons suspected of trafficking in drugs; interviewing witnesses, cooperating individuals and informants relative to the illegal trafficking of drugs and the distribution of monies and assets derived from the illegal trafficking of drugs (laundering of monetary instruments); and participating, including as a case agent, in investigations entailing the supervision of specific investigations involving the trafficking of drugs and the laundering of monetary instruments, including interception of wire communications.

7.     In the course of conducting drug investigations, TFO Kenneth Jeske had personally interviewed confidential informants and persons involved in the distribution of illegal drugs.   In addition, TFO Kenneth Jeske consulted with other experienced investigators concerning the practices of drug traffickers and the best methods of investigating them.

8.     In preparing this Affidavit, TFO Kenneth Jeske  has conferred with other experienced detectives and law enforcement officers and has personal knowledge of the facts discussed in this affidavit.

9.     The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; analysis of public records; analysis of social media information; and analysis of telephone records.

10.     Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## II.     <u>BASIS FOR PROBABLE CAUSE</u>

11.     Your Affiant is currently assigned to Phoenix DEA Tactical Diversion Squad and in that capacity investigates drug overdose deaths. Your Affiant knows, based upon training and experience, the distribution of drugs often occurs via cellular communications including phone calls, text messages, and application messages (including SnapChat, Instagram, WhatsApp, Facebook Messenger.)  Your Affiant further knows, based upon training and experience in overdose death investigations that these drugs related communications are often located in the cellular/electronic devices and a search of these devices will result in the discovery of these communications. Your Affiant knows that the

3

discovery of these drug related communications will aid law enforcement in identifying evidence of drug trafficking, and could contain evidence relevant to the death of the decedent in this investigation.

Discovery of Decedent and Subsequent Investigation

12.     On January 3, 2022, at 4:20 p.m., the Phoenix Police Department responded to a call for service for a report of a female found not breathing at a residence in Phoenix (hereafter "the Residence").  Upon arrival officers observed AD[1] laying on a bedroom floor next to her bed not breathing and cold to the touch. Phoenix fire personnel pronounced AD deceased at 4:35 p.m.

13.     Phoenix Police officers observed burnt tin foil, a hollowed-out pen, and another piece of burnt tinfoil on the bathroom countertop next to AD's bedroom.  The Phoenix Police Lab tested the one of the pieces of burned foil and confirmed the presence of fentanyl residue.

14.     Your Affiant knows a common way to ingest fentanyl is to utilize a piece of tinfoil as a tray, burning the bottom of the tinfoil with a lighter while placing the fentanyl (either pill form or powder) on top of the tinfoil then inhaling the smoke emitted from the fentanyl using a hollowed-out pen.

15.     On March 7, 2022, the Maricopa County Medical Examiner's Office (OME) determined that AD's cause of death was fentanyl and methamphetamine toxicity.

16.     A cellular phone that belonged to AD was located in the bedroom where AD was found deceased.

17.     AD was temporally living at the Residence by herself.  Prior to that, on December 31, 2021, AD was residing at a sober living facility, but tested positive for

---

[1] "AD" are the initials of the deceased, who is the Decedent/victim in a currently charged and pending criminal case.  The Decedent will be referred to as "AD" throughout this affidavit.

COVID-19 and was asked to temporarily leave to quarantine. Her grandmother allowed AD to quarantine by herself at the Residence until she was cleared to go back to the sober living facility.

18.    AD's Mother, informed Phoenix Police officers that she found Facebook Messenger communication between her daughter, AD and a subject named Stuart Andrew NEWELL on January 2, 2022, that indicated AD purchased methamphetamine and fentanyl powder from NEWELL.

19.    On May 6, 2022, your Affiant obtained a search warrant to search AD's Facebook Account for activity between December 1, 2021, and January 4, 2022, authorized by the Honorable Judge David Seyer, Maricopa County Superior Court, State of Arizona (Search Warrant 2022-004701).

20.    Your Affiant searched AD's Facebook Account in an effort to identify from whom/where AD obtained the drugs that were believed to have caused her death.  Upon searching the Facebook Account, your Affiant, observed communications between AD and "STU ANDREW NEWELL" on the application, Facebook Messenger.

21.    There was a series of Facebook Messenger text messages exchanged between AD and NEWELL on January 2, 2022 (the night before AD overdosed):

AD: "hey" … "sorry" … "i was looking for a little" … "like i just want a shot of h" … "g" … "lmk" … "asap and i can try and figure something out" … "i'll pay for whatever if u want to send an uber or whatever"

NEWELL: "sorry I was passed out and do not start work until "4ish" … "but if you still want that lmk"

AD: "yes asspppp" … "u savior"

AD: "can I just like zelle u or nah""

NEWELL: "that's fine what's your addy"

AD: "[address for the Residence]"[2] ... "do you have blue too like just one or two"

NEWELL: "ok it says its 25 bucks for the uber package"

AD: "ok how much do y want me to send u"

NEWELL: "cool I trust you give me a bit too make the package just send 50 and I'll give you a little fent" ... "I don't have a lot of g left but ill give you enough for a shot or two and a couple trays of fent"

Newell then messaged AD a screen shot of the Uber request, starting at Newell's address in Scottsdale, with a destination of the Residence where AD was found deceased.

22.     Your Affiant believes this conversation shows NEWELL agreed to sell AD fentanyl powder ("fent" is a street term for fentanyl) and methamphetamine ("g" is a street term for methamphetamine) for $50 dollars utilizing an Uber package delivery service.

23.     Further conversation over Facebook messenger between NEWELL and AD ensued about the drug deal on January 2, 2022. AD sent the Zelle payment and the two discussed providing AD's cell phone to the Uber driver since the neighborhood is accessed through a guarded security gate.   NEWELL confirmed he received the Zelle payment of $50 dollars.

NEWELL: "cool I got it I'm just getting it all ready I'll order the Uber in a sec. you should be able to see where it's at.  Do you have a phone number so I can put it down for the package?"

AD: "4804085255"

---

[2] The address is redacted per the local rule prohibiting the publication of home addresses.  The redacted address is the address for the Residence where AD was found deceased.  The address in the Facebook message was written in all lowercase letters and did not contain the unit number.

NEWELL: "sorry I'm ordering it right now I'll send you the link so you can see where it's at. My bad I ran out of baggies I was looking for something to put them in"

AD: "lol nah ur good I appreciate you a lot"

NEWELL: "I'm just putting them in foil if that's cool" NEWELL then confirmed he sent the Uber.  NEWELL messaged AD a screen shot of the Uber order which included a map of where the package was to be picked up and a description of the Uber vehicle including the license plate

NEWELL: "Yo it said she's there" … "you got it right?"

AD: "yesss"

24.     The security guard gate log shows that at 12:53 p.m. an Uber arrived as a guest at the Residence (including the unit number), and that the Uber left at 12:54 p.m.

### Evidence of Drug Trafficking at NEWELL's Place of Employment

25.     NEWELL's Facebook messenger account contained messages, where NEWELL offered to sell someone "blues" for $4 per pill, and on December 23, 2021, told that same person to come to NEWELL's place of employment, a restaurant in Scottsdale, Arizona, to pick up the pills.  NEWELL also sent another message to someone indicating that his source of supply came to his place of employment to resupply him.

### Newell's Arrest

26.     On September 8, 2022, at 9:50 a.m., Stuart NEWELL was arrested without incident at pursuant to an arrest warrant issued by the U.S. District of Arizona in CR-22-01128-001-PHX-DLR.  NEWELL was at his place of employment located in Scottsdale Arizona.

27.     Prior to the arrest of NEWELL, investigators observed NEWELL arrive to work carrying a black backpack with green trim.  Upon contacting NEWELL inside the business NEWELL had the same backpack next to him.  NEWELL was asked to collect

his personal belongings and was escorted out of the business where he was placed under arrest. A search of NEWELL's pockets was conducted by TFO Kenneth Jeske. Inside the front right pants pocket, TFO Kenneth Jeske located a small piece of folded tinfoil and two hollowed out straws. SA Paul Nack unwrapped the small piece of tin foil and discovered two blue pills with an imprint of "M" "30" stamped on them. Your Affiant knows from training and experience these pills are consistent with fake pills known to contain fentanyl.

28.     NEWELL's backpack was searched after he carried it outside of the store with him prior to being arrested. Inside the backpack, SA Paul Nack located approximately 98 blue pills with the "M" "30" markings, similar to the pills found in NEWELL's front pants pocket. Also located in the backpack was approximately 3 grams of a crystal substance, suspected to be methamphetamine. Based on training and experience, your Affiant knows that 98 suspected fentanyl pills is an amount that could be consistent with distribution, as opposed to personal use.

29.     NEWELL had two cell phones in his possession at the time of arrest. One cell phone was found in his pants pocket by TFO Jeske and the other cell phone was located in the backpack by SA Paul Nack.

30.     **Telephone 1** was located in NEWELL's pants pocket by TFO Jeske was described as a black in color Samsung Galaxy S9 plus, and is now in the custody of the Phoenix DEA.

31.     **Telephone 2** was located in NEWELL's backpack by SA Paul Nack was described as a black in color Apple iPhone with a partially cracked corner screen, and is now in the custody of the Phoenix DEA.

32.     Your Affiant knows people involved in the purchase, sale, transportation, and storage, of illicit drugs often use their cellular phone(s) to engage in illegal activity and that evidence of this activity is often found on the cellular phone(s). In this instance, based

8

on the aforementioned, your Affiant submits there is probable cause to believe there is evidence of illicit drug transactions on NEWELL's cellular phones.

33.    **Telephone 1 and 2** are currently in storage in DEA custody in Phoenix.  In my training and experience, I know that **Telephone 1** and **Telephone 2** have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when **Telephone 1** and **Telephone 2** first came into the possession of the DEA.

## III.    <u>ITEMS TO BE SEIZED</u>

34.    Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the **Telephone 1** and **Telephone 2**.

35.    Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following:

a.    Drug traffickers commonly use cellular telephones to communicate with other drug traffickers and customers about drug-related activities through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, drug traffickers commonly use other capabilities of cellular telephones to further their drug trafficking activities.  Therefore, evidence related to drug trafficking activity is likely to be found on **Telephone 1** and **Telephone 2**.

b.    Drug traffickers often have access to large amounts of United States currency in order to maintain and finance their ongoing trafficking activities.  Therefore, records of the movement of drug proceeds, including deposits, transfers, and purchases, are likely to be found on **Telephone 1** and **Telephone 2**.

36.    In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over **Telephone 1** and **Telephone 2**.

## IV.    DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

37.    As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the **Telephone 1** and **Telephone 2**. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

38.    *Probable cause.*  Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on **Telephone 1** and **Telephone 2** for at least the following reasons:

a.    Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime.  The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense.  The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

b.    Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the

10

communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

c.      Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

d.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

39.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of **Telephone 1** and **Telephone 2** because:

a.      Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a

deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      b.    As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or

12

exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

      c.    A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

      d.    The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

      e.    Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

      40.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise

copying the contents of **Telephone 1** and **Telephone 2**, including the use of computer-assisted scans.

41.     *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**V.     CONCLUSION**

42.     Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), and 21 U.S.C. § 843(b) (Use of a Communication Facility to Commit a Federal Drug Felony), are likely to be found in the contents of **Telephone 1** and **Telephone 2** further described in Attachment A-1 and A-2.

Task Force Officer Kenneth Jeske
Drug Enforcement Administration

Subscribed electronically and sworn telephonically this _____21_____ day of September, 2022.

HONORABLE EILEEN S. WILLETT
United States Magistrate Judge

14